I am going to reserve three minutes for rebuttal and say thank you to the Supreme Court judge. In case we have any briefs today, we contend that the judge in the District Court erred in three ways. One, it held a tender in this case to an improper and invalid standard. We believe that the court also, and I'll get back to that, we believe that the court also failed to apply certain additional standards that apply to standards. Things like when you're projecting utility, there's a finding of fact on the bankruptcy court. The evidence presented in file failed to establish a credible proof. There was a valid tender of the lowest price of $150,000, and the defendants of the precedent are going to appear before me with a valid tender. Are you just trying to contend that that's purely erroneous? Everything else seems to me to be a way to dance around the term purely erroneous in the application of the superior standard. Because if that finding isn't purely erroneous, I don't know what your argument is. Well, certainly so. Our argument is that this argument is the only standard, the only legal standard that is anywhere in the findings of the law and the conclusions, the findings of the fact and conclusions of the law, is that the court relied on something called section 1500. You're not answering my question yet. Is there a question yet? There's no question. Yeah. So the court, by applying the wrong law? Well, my understanding, I think, for the sake of your existence, is that inside the question of whether there was a tender, the question is whether there was the ability to perform, which I gather is a somewhat separate question than is really kind of a standing question or a question of whether you had an injury that would lead to damages. If you weren't about your proficiency, didn't at any relevant time have the ability to perform, then you're not entitled to maintain a damage exemption, even if what you did was greatly called, otherwise called, tender. And so there's a finding that you didn't have the ability, that your client did not at any relevant time have the ability to perform. So we see that throughout the erroneous evidence, leaving aside all the stupid stuff about whether this is a tender or not a tender. Am I wrong about my structure here? Well, again, the court made those findings based upon what I can tell. So it's not a factual finding. I don't see any legal conclusion in that finding. As to the ability to perform, leave aside the tender question. Again, the court doesn't cite any facts. Who could your client have done it? And pay or not? And the court said, couldn't have paid the money, didn't have the money. I'm struggling to figure out what a legal scenario has to do with that factual conclusion. Sure. If I could explain. I believe that all of this, the trial court said, he's basing his position on something in section 1500, which is dissatisfaction of an obligation. The trial court says in his findings of fact that a tender is, here you go, here's the money. So he was looking in his- I agree with this. Let's not worry about whether the fact that he said he'd give it to you in two weeks, and the lawyer said I'll give you the money in two weeks, is it good enough as a tender? There's still the question of whether he could have given it to him in two weeks. So there was, we've argued and we've said there was plenty of evidence to show that he would have been looking for the form. And the bankruptcy court wasn't persuaded by that evidence. And it's clear to me, your brief is arguing as if these are evidence of issues. The court says, never mind, that's not the standard now. The standard is whether the contrary finding was clearly erroneous. The fact that there might have been evidence to support a decision in the other direction isn't going to be enough to persuade us that the finding that was actually made was clearly erroneous. Again? It's a clearly erroneous standard that applies to that. So I don't know if I started with that inquiry. It seems to me you've done everything you can to avoid facing up to that standard. Assuming that the clearly erroneous standard did apply, which I believe it's de novo because I think there was a mistake with the law in effect. But assuming that it is, the court overlooked the fact that it had two witnesses, not even our witnesses, both testifying, that they would have lent my client money before the tender. There was. I'm not sure the evidence was quite as clear as that. And that still doesn't deal with the evidence on the other side. There was also evidence that my client testified that he was receiving money from a contracting analyst. Did he ever produce any documents to show that he had that money? Yeah, the bankruptcy schedule that we had was. Let's say so. Did he ever produce any bank statement? Did he check what he received from somebody else? Anything else that shows that he actually had the cash? If we argue that. He asked that question, yes or no? Was there any? There wasn't any. He didn't submit anything. So it's his say-so. It's all effective on his side of the balance, his say-so. And that would be sufficient evidence that the bankruptcy judge believed it. But the bankruptcy judge didn't believe it. But, again, I believe the bankruptcy court came to this conclusion because he was still thinking about civil code section 15. Your first part looks tender. I don't understand what 1500 has to do at all with the question of whether your client had the cash. Well, again, it goes through. What evidence was there that your client had the cash? And how is that stuff against what the bankruptcy court cited, which is a court of finding that your client did not have the cash? So if we go back even to the first trial, when Ms. Spiegel, who was the original landowner, justified, and I think it's in my briefs, when she justified that she had two homes, a water speed business, she was the one that filed for bankruptcy, so she's not going to be the source of the cash. Well, remember the standard for determining performance, ability to perform, and we were just talking about that. Performance is one thing. Ability to perform is something else. I'm waiting for evidence that the ability to perform is there. And telling me that the bankrupt justified a certain way, she has to be aware of all the women in the bankruptcy court in the first place. Again, another fact I think that was overlooked by the trial court judge is the fact that the plaintiff in this case filed a lawsuit during S group. So when was performance due? Performance was due during S group. There's testimony that everybody agreed to that. So what? There still hasn't been any evidence that he would have performed during S group. Whatever you think that he should have performed. The problem is they filed a lawsuit four days prior to the close of S group. And therefore what? Therefore that's not fair if you're trying to be able to perform. Well, they closed the S group and terminated the sale. And so the sale went to produce the money because the sale was going to produce $9,000 a month. Well, again, if you look at Bettle and Henry versus Sherman, again, they both say that ability to perform is self-executing. So if they would have waited, all they had to do was wait four days for the close of S group. And then he would have performed? No, it's $321 over a big stack of cash. The sale was paid over time. Well, it's $9,000 a month. Where is that money coming from? Where is that $950,000 coming from with your money for the talent authority? Again, it's coming from the desulficates. It's coming from the loans. Again, the — What was the first thing you said at a DRF? It's coming from the desulficates contract, which was $2,000. So it's — we have no documentation whatsoever. Except for the bankruptcy schedules. Those were filed by your clients. So we still have nothing. Nothing damaged by them. That's fine. But they have no independent corroboration that that money was ever there. So it's — But the money that was received was still around at the time of the debate. The problem is the DRF site. Simultaneously, it was saying that you didn't have the money for other purposes. You didn't have $17,000 for other purposes. But what happened after that time? So he goes and he talks to the plaintiffs and says, Hey, it doesn't look like we're going to be able to continue on the loan, but we are going to try to sell the waterski property. So Sale wouldn't have produced enough money, but the seller testified that she would at least have — if not have paid, she would have reimbursed them for the $150,000. And when did she testify to that? That's the first trial, volume three, page 14, I believe. She was going to get a loan to pay the $150,000. You think the trial judge heard the testimony, was biased or prejudiced against your point of view, right? That's why you're saying if there's a rematch, you go to a different judge. I do, right? But the point is, and as a trial judge, sometimes you're sitting up there and you say, I do not believe anything this person says. And you may be wrong, but you come to that from a totality of circumstances. And you're citing us testimony that you think the trial judge should have listened to to help you, and he did. But the point is the trial judge didn't believe your client and didn't believe the things that were put in the bankruptcy schedule. The trial judge believed your client was in a fund plan type situation and couldn't be trusted. How is that not binding on us here unless it's clearly erroneous, and where's the evidence that's clearly erroneous? Well, I would note that this was originally a state court action. In the testimony or in the judge's decision, the court says that it doesn't feel that getting a loan meets the standard of showing the included performance. It's clearly not the case under Henry v. Sharma, under the bed wall. Even under Versa Gray, 99 investments, all of those cases hold. And you look at the totality of the circumstances, and in this case, in that loans, and even a loan that you don't currently have that hasn't been approved is evidence of an ability to perform. And we believe that that was all there and would, I believe, stand up to a clearly erroneous standard. However, I still believe that it's not an erroneous standard because the court applied a situation of this is an obligation, and not a standard saving that we have for the individual. The problem is that there's such a huge need for coal here because if somebody wants to improve it, the issue in the second trial, as I understand it, was at least partly squarely focused on the ability to pay. And all you had to do was come in with bank records to show you had the money and you didn't do it. Well, we tried to pay them the money. We claimed it. No, you said you were going to pay them the money. Right, but that's standard. That's Walker versus Houston. There should have been evidence that you haven't got money, and the bankruptcy court never saw evidence that the money was actually there to pay. And as a result, I find there's no ability to pay. Now, you may tell me that, well, there was evidence. We had the money in a bank account, or this person had already paid a loan, and that evidence didn't go to the bankruptcy court. So telling me that, well, we could have paid, that's really different. The lesson that I'd raise is that this was never even completed. So we have the first trial. This never comes up. It doesn't come up until the bank raises it. And so we go back to the fourth and second trial. And during the second trial, the issue of ability to perform under overtakes, whether or not there was an actual injury or not, this was never raised during the first trial. It's not an issue here. Well, it was raised at a state court. I think it's a Greenstone case, doesn't it? If we have a finding that your client didn't have ability to pay, why do we go back to what it might have been? Well, I think it has to be specifically, Glenn, if you look at Greenstone, defects in tender, ability to pay, has to be specifically what it was. Because we have to have the ability to, and again, there was no objections to ability to pay. We would argue that that in itself foreclosed the idea that they could raise this at such a late date. They had the opportunity during the time we were catering them to ask for ability to pay. That's grocers check. That you'd have to make an objection to ability to pay at the time so that we could show that we have the ability to perform. So, you didn't get to that. Thank you. Thank you. Thank you, Mayor. Thank you. Thank you. Thank you. Good morning. My name is Michael Smith. I'm counsel for the Greenstone Children and Grandchildren Mental Partnership. During the course of this trial, I think there was very critical testimony in terms of this whole issue. Mr. Wallace was sitting on the witness stand testifying that in a meeting in my office on March 10th, he offered to Mike Wright a $15,000 check, which Mike Wright, or $150,000, which Mike Wright declined to take. The judge also asked Mr. Wallace, did you have the money on deposit at the time? Mr. Wallace said, yes, he did. Notwithstanding that, Mr. Wallace never presented any bank statement, any deposit slip, any cancel check, any invoice, any receipt of funds, or any transmittal letter, or any witness to corroborate his $150,000 bond deposit. His wife testified, Ms. Spiegel testified, she didn't have an idea. She didn't know anything about it, so she didn't have any bank statement discussion. She didn't know anything about what? Pardon? She didn't know anything about what, about whether he had the money or not? Yes, whether they had the money at that time. And what happened here, ultimately, is Judge Russell was. I do have a question about the credibility of the charges. Sure. The district judge decided to have a new trial, and he decided to have a new trial because he said the first trial focused on the question of the meaning of the agreement. That's correct. But then later he says, well, I don't believe what he said about this check in your office because he didn't mention it the first time. Well, that seems like a contradiction. I mean, in other words, if the first trial was sufficient on the question of danger and performance, then there should have been a second trial. If it wasn't because it was focused on something else, how could he be deemed not credible for not having mentioned it earlier when it wasn't the focus of the trial but the judge's own admission? What happened here is there was no discussion in the first trial by Mr. Wallace of having taken the money. Maybe because it wasn't the focus of the trial. That wasn't the focus of the trial. The focus of the trial was interpreting the language of the deed of trust and the promise for a note. Well, because ordinarily I would think that why would he even have a second trial at that time when the judge felt he didn't have a need to have it and it was about something else? What happened is that in the second trial, there was no discussion by Mr. Wallace, whether in testimony or in his summary testament motion, of having submitted a property tender of $50,000 on March 10th, and Mr. Wright claiming that. He testified. He said he had a testimony to get done. He did testify. He did after he had filed a summary testament on the 8th of trial, and ultimately came up in the summary testament motion. He didn't mention in his affidavit or anything about having made a tender on March 10th. But I felt that the district judge relied in large part on the fact that he didn't mention in the first trial. Am I wrong? I don't think that's completely wrong. I think he wasn't mentioned in the first trial. He wasn't mentioned in the second trial until he got up to trial itself. And on the eve of trial, Mr. Wallace filed a motion for summary judgment. He filed a declaration. And in that declaration and in that motion, he said nothing at all about having made a tender on March 10th. My client, Mr. Wright, filed a counter motion. And in our counter motion, we said there had not been any tender. And what happened is, as the approach trial, Mr. Wallace files a supplemental declaration on the then pending motion for summary judgment. And in that supplemental declaration, he makes a statement relating to the March 10th. I mean, as a physically educated before, I don't think the question whether he tendered or didn't tender is optimally dispositive if he couldn't perform anyway. But it appears that the judge, at least before him, Mr. Wallace overall not credible, including on the question of whether he could have informed, in part because of what he said about this tender in March. So it does seem relevant even to the performance question. Well, the district judge had found that, A, there was no tender made in March, and B, that he didn't have the ability to perform any $150,000 tender. So the district judge made two findings of that. I think it was the court had, and Judge Burrell, the district judge, did later confirm the appeal, too. And the other technical point is that it is true, as I understand it, that the ability to get the money from a loan would be, could be a valid evidence of the ability to perform if, of course, sufficient evidence, right? It can be, yes. Then does the judge say, I don't know whether the trial judge said otherwise? What we have here, though, is we have. I know. I'm asking you whether the bankruptcy judge was under an erroneous legal impression about that question. I don't think so. You didn't say. You didn't keep that. I think what you had was you had a, now what you see in brief is you see a fleeting comment, a question to the, a witness of the possibility of a loan transaction. There was no discussion that there had been a loan discussed or that there was a loan anticipated or that there was any firmness to it. I don't, I can't stand, stand in the head of a district court for bankruptcy to the trial court, but I don't, as a matter of fact, believe it. So from our standpoint, we don't think that Mr. Wallace ever made a credible show, that he had the ability to perform any tender that he had made. And we take issue with the fact of whether or not the tender was made, because really the only discussions are two conversations that happened around the time the transaction got started, which have nothing to do with whether or not the tender was made. As of November of 2007, Mr. Wallace talked to Mr. Bryant and told him he wasn't going to be able to make a payment, as expected, this coming year. And then in January of 2008, Mr. Wallace did not make a payment and in fact told Mr. Wright that he was out of money and couldn't afford it. So there's no suggestion of a tender there. The only document that reflects the potential of a tender is the letter of February 27, 2008 from Mr. Enright to me, in which he tells me that his client, by way of a letter, is tendering to Mr. Wright $150,000, which will be available within two to four weeks from the date of this letter. And that's the only document. And it's our position that there's no showing, if you look at the other evidence, that Mr. Wallace had the ability to pay that money, either then or two to four weeks or even later. He had opened an escrow on March 17th. There's no showing of any attempt by him to place $150,000 in escrow. Frankly, if he has enough sufficient that he can tell the trial judge, I had it on deposit or I didn't need to deposit it in the escrow. The answer would be because the, your clients were refusing to, or their position was we're not going to release it even if you deposit $150,000. I'm sorry, Judge, I didn't hear you. Their position was that we're not going to release the loan, even if there was money, even if you put it in $150,000. So I say put it in $150,000. We'll strike that out first. I mean, that's his position, right? You know what's wrong with that? I understand that's his position now, but frankly, he never made his tendency to do that. Well, if your client, if you already knew your client wasn't going to accept it, if you put the money in an escrow, it's not going to, it's not, it's not going to strike first that you put your client and you're accepting that. It wasn't going to get released $150,000, was it? Certainly, we didn't want to. We're going to allow it, but often your position pretty forcefully stated that that wasn't enough. Yes. And he knew that was your position. Yes. So it's not illogical that somebody would be put money in if the new cat was poodle that doesn't relieve the obligation of proving that he had money, but you're saying, well, why wouldn't he put the escrow in? It makes perfect sense to me that he wouldn't get the escrow in. We have cited to the court the case of Dick E. B. Coon, which holds not only do offers have to be made in good faith, but at the time that the plain tender is made, that the party has to have the ability to perform that tender. That's a different question. But even if the person to whom the tender is made is not willing to accept that tender at that time, it doesn't relieve the party of the requirement of having the ability to perform and to pay. And if Mr. Wright had said, I'm not going to accept that tender, then that's still the position we're in here, that Mr. Wallace was obliged, if he wanted to make a tender that sealed his deal, he was obliged to have the ability to pay that tender. And he never did. Thank you. Thank you. Thank you. Just a couple of concluding remarks. Thank you very much for indulging me. First of all, it is our position that the ability to perform should never come up because the tender was... I mean, I get that there's a significant fallback position was being put on the table on agreement, but it's basically that this really wasn't sealed. But recall that the plaintiff actually sent us a letter before the reserve remittance saying, before we'd ever made a tender, saying we're not going to accept any release from you unless there's an LTV. Okay, but the argument, as I understand it, was to solicit a sale. First of all, it wasn't actually a... It was a sale that involved a parcel into his property, not the home property. Correct. And my reply is that they never objected. Mr. Wright said he had no problem with the sale several times during the first trial, the second trial, in his depositions. Do you think he might have? No. Because this looks like a sale. This looks like a sale for another reason, which is that this woman was paid, you know, a relatively reasonable amount of money given the offspring cost, and it was a two-year open payment. And, you know, a very strong liability that nothing was done for her here. They never raised any objections to the court. During the first trial, found no problem with the sale. During the second trial, found no problem with the sale, of course, for tender. Thank you. All right. Thank you very much, David. Thank you both. All right. So the argument in Wallace v. Wright in the grandchildren case is submitted. We will now launch the response to questions. QPS, please.
judges: Berzon, Clifton, Lasnik